## Louisville & Nashville Railroad Company v. Holloway's Administrator.

(Decided February 24, 1915.)

### Appeal from Henderson Circuit Court.

1. Death—Action for Death of Engineer—Damages—Collision—Evidence.—In an action for damages for the death of an engineer in a collision, where it is admitted by the defendant that he came to his death by reason of the collision, it was error to admit in evidence the details of the wreck, showing the burning of the body therein, etc., as such evidence tended to appeal unreasonably to the sympathies of the jury.

2. Trial—Employers' Liability Act—Scope of—Practice.—In an action under the Federal Employers' Liability Act which is tried in the State courts the rules of practice and procedure in force in the State will be followed. The Federal Act merely fixes the rights of the parties affected thereby, and does not deal with the question of practice and procedure.

3. Trial—Instructions—Employers' Liability Act—Negligence.—In an instruction on the diminution of damages by reason of contributory negligence under the Federal Act, the jury should be told that where the causal negligence is partly attributable to the employe and partly to the carrier, he cannot recover full damages, but only such a proportional amount as bears the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both.

4. Master and Servant—Employers' Liability Act—What Not Purpose of Act.—It was not the purpose of the Federal Act to authorize a recovery by one whose own negligence, without the co-operation of the negligence of any other employe, was the sole cause of the injury.

N. POWELL TAYLOR, JOHN C. WORSHAM, CHAS. H. MOORMAN and BENJAMIN D. WARFIELD for appellant.

CLAY & CLAY for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

In May, 1912, John G. Holloway, a locomotive engineer employed by appellant, while operating a northbound freight train between Pensacola, Fla., and Montgomery, Ala., was killed in a collision between his train and a work train.

His administrator qualified in Henderson County, Kentucky, and instituted this action in that county under the Federal Employers' Liability Act for damages; the jury returned a verdict in the sum of $32,900, and a judgment having been entered thereon this appeal is prosecuted by the company.

Only general allegations of negligence were made, and it was further alleged that decedent left a widow as his only dependent and that the action was prosecuted by the administrator for her benefit.

In an amended petition it was alleged either that plaintiff's intestate was killed by the collision of the two trains, or was buried under or crushed and killed by the wreck, or was burned to death in the fire which resulted therefrom. The defendant's answer denies negligence or that the plaintiff's intestate came to his death in any manner by reason of its negligence, and pleaded contributory negligence. But it was conceded by the defendant, on the record, that deceased was killed in the collision and was at the time engaged in interstate commerce.

The work train was going south and had stopped at a point between two stations; the freight train was coming north and was running down grade.

Under the rules of the company it was the duty of the flagman of the work train to go back with stop-signals, to signal and stop the north-bound freight train; also to place a torpedo on the rail 1,500 feet from his train and then continue to go back until he was 3,000 feet from it and there place two torpedoes on the rail 30 feet apart, and then remain not less than 2,100 feet from it until he had flagged the approaching train.

The fireman of the north-bound freight train testified that he did not see the flagman, that no torpedoes were exploded, and that so far as he knew no signals had been given. Another employe, who was at the time riding on the pilot or cow-catcher, testified that he did not see the flagman and that no torpedoes were exploded. They each said that they did not know of the

presence of the work-train on the track until they rounded a curve a few hundred feet from it, whereupon the employe who was riding on the tender gave the signal and they both jumped just before the collision. There were other circumstances testified to by witnesses tending to show that no signal had been given.

On the other hand the flagman of the work train stated that he proceeded to the point where he was directed to go and even beyond that; that he placed the torpedoes on the track, and when the train approached he gave the signal with his flag, but did not receive the customary response by whistle; that when he failed to receive the response and the train showed no sign of slackening its speed he hallooed to the engineer as the train passd and again tried to give a signal to somebody on the caboose, but saw no one there; he states that he saw no one on the engine or in the cab of the engine except that at the engineer's window he saw somebody's arm in the window and the top of a man's hat, who seemed to be looking down.

The crux of the whole case is whether or not the flagman gave the signals in time for the train to have been stopped before reaching the work train; and, if he did, whether the engineer was at the time keeping such a lookout as would have enabled him to see and hear them. The evidence, as stated, without going into details, shows that there was a sharp conflict on these issues, and it was therefore proper that the case should have been submitted to the jury.

The complaint that it was error to permit evidence as to the burning of decedent's body in the fire which resulted from the collision seems to be justified; it has already been admitted of record that he had lost his life as a result of the collision, which left negligence and contributory negligence the only questions to be inquired into. Under this state of the record going into such details could only tend to inflame the minds of the jury and unreasonably appeal to their sympathies, and that it did have such effect is apparent from the amount of the verdict.

The petition alleges that the decedent left a widow, but no children, surviving him, and that the action is prosecuted for her benefit alone; but it is neither alleged nor proved that she had during his lifetime received any pecuniary benefits from him, or that she had any

expectation of so doing in the future if he had not lost his life.

The Federal Act provides that railroads engaged in interstate commerce, ''shall be liable in damages to any person suffering injury while he is employed by such carrier, in such commerce, or, in case of the death of such employe, to his or her personal representative for the benefit of the surviving widow or husband and children of such employe; and, if none, then of such employe's parents, and, if none, then of the next of kin dependent upon such employe, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employes of such common carrier.''

It is urgently insisted for appellant that as the Federal Act only provides for the recovery of pecuniary benefits of which the beneficiary has been deprived by reason of the negligence of the carrier, that there can be no presumption that even the decedent's wife had been deprived of such benefits, in the absence of allegation and proof; in other words that in a case where the wife is the sole beneficiary there must be both allegation and proof of her actual dependency and that she had been deprived of pecuniary benefits.

Many authorities have been cited, both of the Supreme Court and of this court, in some of which the language would seem to be broad enough to bear the interpretation claimed by appellant; but in none of these cases was the wife the sole beneficiary, and, therefore, the precise question involved was not presented in any of them.

As this case must be retried for reasons hereinafter given, we have not deemed it necessary to now pass upon this question; but upon the return of the case the appellee may amend his pleadings.

It is further argued for appellant that as the action was brought under the Federal Law it should be tried in accordance with the rules of the Federal Courts, and that, therefore, the Federal rule which permits a trial court to take the case from the jury where the evidence preponderates in favor of one side or the other, should be applied in lieu of the scintilla rule which has long been in force in this State, the contention being that the great weight of the evidence shows the signals were given by the flagman.

The Act in question, however, does not deal with the question of practice or procedure, nor undertake to prescribe the practice to be followed; it merely fixes the rights of the parties. Therefore, even if the weight of the evidence had shown, as claimed by appellant's counsel, that the flagman had been guilty of no negligence, still under our rule the court would not have been justified in giving the peremptory instruction asked for. C. & O. Ry. Co. v. Kelly, 161 Ky., 655.

The instructions given by the court are as follows:

"(1) Gentlemen of the jury, the court instructs you that it is admitted by the pleadings, and must be taken as true, that John G. Holloway met his death at the time and place stated as the result of a collision between two trains on the defendant's railroad, and that the said John G. Holloway was at the time in the employ of the defendant as engineer on one of said trains. The court further instructs you as a matter of law that the defendant company was at that time engaged in commerce between several of the states, and that the said John G. Holloway was at the time of his death employed in commerce between several of the states.

"(2) The court further instructs you that it was the duty of the defendant company, by and through its officers, agents or employes, to give to those in charge of the train upon which the said John G. Holloway was engineer reasonable warning of the presence of the work train of the defendant upon its main track at the time in question by placing torpedoes upon its track or by flagging, or both, or in some other reasonable manner while such train was a sufficient distance from said work train as would have enabled those in charge of such moving train to have stopped the same by the exercise of ordinary care in time to have avoided the collision with said train; so, therefore, if you shall believe from the evidence that the officers, agents or employes of the defendant failed to give such reasonable warning to the engineer, or other person, in charge of the train upon which said Holloway was employed, either by placing upon the track torpedoes or by flagging for a sufficient distance from said work train as would have enabled said engineer or other person in charge of said moving train by the exercise of ordinary care and precaution to have stopped the same in time to have avoided said collision, and that as the result of such failure, if any,

the collision occurred and said Holloway killed, then in that event you should find for the plaintiff, the measure of recovery, if you find for the plaintiff, being such an amount in damages as will fairly and reasonably compensate the widow of the said John G. Holloway, deceased, for the loss of pecuniary benefits she might reasonably have received if the deceased had not been killed, not exceeding the amount claimed.

"But unless you shall so find and believe from the evidence as above required you should find for the defendant.

"(3) The court further instructs you that even though you may believe from the evidence that the defendant by or through its officers, agents or employes was guilty of negligence as above defined, if any there was, yet if you shall further believe from the evidence that the deceased, John G. Holloway was also negligent, that is, failed to keep a lookout for signals, if he did so fail, or failed to use ordinary care to stop his train after discovering the work train was on the track, or failed to exercise ordinary care to leave his train and prevent injury to himself, if he did so fail, after discovering the danger, if any, and that but for such contributory negligence, if any, the accident and injury would not have occurred and his death resulted, yet such contributory negligence, if any, will not bar or prevent recovery by the plaintiff under the second instruction, but in such event the damages, if any, shall be diminished by the jury in proportion to the amount of negligence, if any, attributable to the said John G. Holloway by reason thereof.

"(4) The court further instructs you that it was the duty of the deceased, John G. Holloway, to use every reasonable effort at his command after having been warned or signalled of the presence of the work train upon the track, or after having discovered its presence on the track, to stop said train and prevent said collision and protect himself from danger or death, if it could have been done by the exercise of ordinary care, and the failure on his part so to do, if any, would be contributory negligence as defined in these instructions; but, the court instructs you that if you shall believe from the evidence that the deceased, John G. Holloway, was through the negligence, if any, of the defendant, its officers, agents or employes, placed in a position of peril,

where he believed or had reasonable grounds to believe there were open to him two or more possible means of escape, the fact that he adopted one of such means of escape and was killed will not render him guilty of contributory negligence even though the jury may believe, from the evidence, that had he adopted some other means of escape he would not have been killed, if the said Holloway, at the time believed, and had reasonable grounds to believe that the means he adopted were the safest for him considering his position and the duty he owed to those upon the train he was operating.

"(5) The court further instructs you that if you shall believe from the evidence that the defendant's flagman, W. H. Taylor, Jr., flagged the train on which John G. Holloway was engineer at the time the accident complained of occurred, in time for the said Holloway by the exercise of ordinary care to have stopped said train before it collided with defendant's work train, and if you shall further believe from the evidence that the said Holloway was not on the lookout at the time said Taylor flagged said train, if he did so, then in that event said deceased, Holloway, was guilty of contributory negligence and you should so find, and will, in that event, diminish any damages you may award against the defendant by an amount in proportion to the negligence, if any, attributable to the said Holloway, as aforesaid by reason thereof.

"(6) The court further instructs you that if you shall believe from the evidence that at the time the deceased, Holloway, lost his life, he was operating his engine at a rate of speed in excess of the schedule rate of speed permissible for similar engines, engaged at similar service at the point where the injury occurred, if he was doing so, and if in doing so he helped to cause or bring about the accident, then, in that event, you will find that he was guilty of contributory negligence and will diminish any damages you may award against the defendant by an amount in proportion to the negligence, if any, attributable to the said Holloway as aforesaid, on account thereof.

"(7) The court further instructs you that by negligence, as used in these instructions, means the failure to use ordinary care, and ordinary care as used in these instructions is meant such care as an ordinary prudent person would usually exercise under the same or similar circumstances as proven in this case."

We see no reason to criticise the first, second, fourth, and seventh instructions as they seem to have fairly and fully submitted the propositions stated therein to the jury.

But the third instruction is erroneous in so far as it attempts to submit to the jury the question of the diminution of damages by reason of the alleged contributory negligence of Holloway; while the language of the Statute is used in the instruction on this question, it has been pointed out by the Supreme Court of the U. S. in Norfolk & Western R. R. Co. v. Earnest, 229 U. S., 114, that this is not sufficient, but that the jury should be told that where the causal negligence is partly attributable to the employe and partly to the carrier, he cannot recover full damages, but only such a proportional amount as bears the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both. This same distinction has been pointed out by this court in N., C. & St. L. R. R. Co. v. Henry, 158 Ky., 88, C., N. O. & T. P. Co. v. Goode, 163 Ky., 60.

The fifth instruction is radically wrong throughout; it in effect authorizes a recovery even if the negligence of Holloway was the sole cause of his death. That instruction told the jury in substance that even though the signals were given Holloway in time to have enabled him to stop his train before the collision, he was only guilty of contributory negligence and could recover under the diminution rule laid down in the Federal Statute. But if the flagman in this case gave the signals by waving his flag and placing the torpedoes at such place as would have given the engineer time to stop his train and prevent the collision, there was no negligence, whatever, in the case except that of Holloway. Surely it could not have been the purpose of the Federal Statute to authorize a recovery by one whose own negligence without the co-operation of the negligence of any other employe, caused the accident. The whole fifth instruction should have been omitted and one given in lieu thereof along the line suggested. Ellis, Admr. v. L. H. & St. L. Ry. Co., 155 Ky., 745; Helm v. C., N. O. & T. P. Ry. Co., 156 Ky., 240; Long v. Southern Ry. Co., 155 Ky., 289; Grand Trunk R. R. v. Lindsay, 223 U. S., 42; C., N. O. & T. P. Ry. Co. v. Goode, 163 Ky., 60.

The sixth instruction directing a diminution of the damages, if any, by reason of the alleged excessive speed at which Holloway was running his train at the time and place of the accident, should also embrace. the idea suggested as to the diminution of damages.

Several other questions are urged for reversal, but as the same things will not likely occur on another trial it is unnecessary to consider them.

The judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.