## Louisville & Nashville Railroad Company v. Holloway's Administrator.

(Decided February 3, 1916.)

## Appeal from Henderson Circuit Court.

1. Master and Servant—Federal Employers' Liability Act—Petition—Averment as to Pecuniary Loss.—When the petition shows the relation of the dependent to the deceased, a general averment that the person for whose benefit the action was brought was dependent upon the deceased and had a pecuniary interest in his life and suffered a pecuniary loss by his death, is sufficient without setting out in detail the reasons showing the dependency or the pecuniary loss.

2. Courts—Federal Employers' Liability Act—Jurisdiction—Majority Verdict.—Circuit courts have jurisdiction of cases to recover damages under the Federal Employers' Liability Act, although under the law a majority of the jury may make a verdict.

3. Trial—Federal Employers' Liability Act—Instruction on Pecuniary Loss.—An instruction telling the jury that the measure of recovery was such an amount in damages as would fairly and reasonably compensate the widow, who was the sole beneficiary, for the loss of pecuniary benefits she might reasonably have received if the deceased had not been killed, was correct.

4. Trial—Federal Employers' Liability Act—Instruction on Contributory Negligence.—An instruction, after setting out in correct form the contributory negligence charged against the deceased employe, properly told the jury that if they found he was guilty of contributory negligence "the damages, if any, shall be diminished by the jury in proportion to the amount of negligence, if any, attributable to the deceased by reason thereof. So that the plaintiff will not recover full damages but only a proportional part bearing the same relation to the full amount as the negligence attributable to the defendant bears to the entire negligence attributable both to the deceased and the defendant."

5. Death—Federal Employers' Liability Act—Measure of Damages—Evidence.—In estimating the pecuniary loss sustained by the widow, it was competent to introduce evidence on the subject of the earning capacity, age, health, habits, character, expectancy of life and mental and physical disposition to labor of the deceased.

6. Death—Federal Employers' Liability Act—Measure of Damages—Pecuniary Loss.—Where it appeared that the deceased was earning two hundred dollars a month, and in addition to supporting his wife, he gave her half of his earnings after payment of expenses, the jury had the right to consider that the pecuniary loss sustained by the widow was not only the amount necessary to defray her expenses but in addition thereto the amount set apart out of the remainder by her husband for her benefit.

7. Death—Federal Employers' Liability Act—Pecuniary Loss Defined.—Pecuniary loss in the meaning of the Federal Employers' Liability Act means some reasonable expectation of pecuniary assistance or support of which the dependents have been deprived, but does not include damages by way of recompense for grief or wounded feelings.

8. Death—Federal Employers' Liability Act—Verdict for Twenty-Five Thousand Dollars.—Under the facts of this case we cannot say that a verdict and judgment for twenty-five thousand dollars in a suit for the benefit of the widow to recover damages for the death of her husband, who was killed by negligence, was so excessive as to authorize us to set the verdict aside.

N. POWELL TAYLOR, JOHN C. WORSHAM and BENJAMIN D. WARFIELD for appellant.

CLAY & CLAY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In May, 1912, John G. Holloway, a locomotive engineer in the service of the appellant railroad company, while operating a freight train between Pensacola, Fla., and Montgomery, Ala., was killed in a collision between his train and a work train.

His administrator qualified in Henderson County, Kentucky, and instituted this action in that county under the Federal Employers' Liability Act to recover damages for his death. On the first trial of the case there was a verdict and judgment for $32,900, but on appeal to this court, the judgment was reversed, in an opinion that may be found in 163 Ky., 125. On the return of the case to the lower court there was a re-trial with a verdict and a judgment thereon for $25,000.00, to reverse which this appeal is prosecuted.

It does not appear necessary to state with any elaboration the facts surrounding the collision in which Holloway lost his life, because there was sufficient evidence to warrant the jury in finding that Holloway while free from contributory negligence came to his death on account of the negligence of the flagman of the work train with which the engine Holloway was on collided. And this issue of fact was submitted to the jury under proper instructions, and the jury necessarily found that the negligence of the flagman was the direct cause of the collision. But, briefly, the evidence shows that the work train had stopped at a point between two stations; that it was the duty of the flagman of the work train to go back the

distance required by the rules and stop the freight train in charge of Holloway by signals and torpedoes, and that he failed to give the required signals, or any signals; that Holloway not being warned of the presence of the work train on the track at the place where the collision occurred, was going at a good rate of speed when his engine, while rounding a curve in the track, ran into the work train.

On the former appeal the judgment was reversed; first, because it was not alleged or proven that the widow of Holloway who left no children surviving him, had during his life received any pecuniary benefits from him, or that she had any expectation of receiving any from him in the future if he had not lost his life; and, second, for error in the instructions.

On a return of the case an amended petition was properly allowed to be filed setting up that the decedent, Holloway, and Myrtle S. Holloway, the person for whose benefit the action was instituted, were married and lived together as husband and wife and were so living at the time of his death; that Myrtle Holloway, at the time of the death of the decedent, "had a pecuniary interest in his life and in his estate and was dependent upon him for maintenance and support and by his death she suffered a pecuniary loss of fifty thousand dollars, the amount claimed in the original petition;" and the evidence introduced on the trial, to be later noticed with more fullness, showed beyond question that the widow was dependent upon the deceased for maintenance and support and had a pecuniary interest in his life, and that by his death she sustained a pecuniary loss.

Some question is raised by counsel that the amended petition as well as the evidence under it was insufficient to meet the requirements of the federal statute, because it failed to specifically point out the particulars in which she suffered a pecuniary loss on account of his death, or the amount of pecuniary benefits she had received from him during his life, or the amount she had reasonable expectation of continuing to receive if he had lived. But we do not find any substance in this criticism of the amended petition or of the insufficiency of the evidence offered in support of it. Under the federal statute as construed by the Supreme Court of the United States in Norfolk & Western Ry. Co. v. Holbrook, 235 U. S., 625, 59 Law Edition, 392, there can only be a recovery for a

pecuniary loss; but we think that when the petition shows the relation of the dependent to the deceased a general averment that the person for whose benefit the action was brought was dependent upon the deceased and had a pecuniary interest in his life and suffered a pecuniary loss by his death is sufficient without setting out in detail the reasons showing the dependency or the extent of the pecuniary loss. When an issue is formed on this question, it then becomes a matter of evidence, and the nature of the dependency and the extent of the pecuniary loss may be developed.

It is also insisted that the trial court did not have jurisdiction of the subject matter of the action for the reason that, contrary to the requirements of the federal Constitution, the State law permits three-fourths or more of the jurors to return a verdict, which will have the same force and effect as if it had been returned by the entire panel. This identical question has been disposed of adversely to the contention of counsel for the appellant by this court in C. & O. Ry. Co. v. Kelly's Admx., 161 Ky., 655; L. & N. R. R. Co. v. Johnson's Admx., 161 Ky., 824, and L. & N. R. R. Co. v. Stewart's Admx., 163 Ky., 823. In the Kelly case the reasons for the holding of the court are stated at length, and need not be repeated here. But in order to save to appellant the right to raise this question on appeal to the Supreme Court of the United States, if it desires to prosecute an appeal, we again affirm that the State law is not violative of the federal Constitution, and that in cases arising under the Federal Employers' Liability Act the trial courts of this State have jurisdiction, and it is proper to instruct the jury "that if all twelve can not agree on a verdict, as many as nine may agree and return a verdict, but if less than twelve and as many as nine agree on a verdict, those who agreed to it must sign it." It might, however, be here further noticed that the verdict was agreed to by the full jury of twelve.

The instruction on the subject of the measure of damages and the diminution thereof in proportion to the contributory negligence of the decedent, if any, is also criticized; but, in our opinion, it answered fully all of the requirements of the federal statute as construed by the Supreme Court, and also conformed to the rule laid down by this court in C., N. O. & T. P. Ry. Co. v. Goode, 163 Ky., 60. The instruction reads:

"The court further instructs you. that even though you may believe from the evidence that the defendant by or through its officers, agents or employers was guilty of negligence as above defined, if any there was, yet if you shall further believe from the evidence that the deceased, John G. Holloway, was also negligent, that he failed to keep a lookout for signals, if he did so fail, or failed to use ordinary care to stop his train after discovering the work train was on the track, or failed to exercise ordinary care to leave his train and prevent injury to himself, if he did so fail, after discovering the danger, if any, and that but for such contributory negligence, if any, the accident and injury would not have occurred and his death resulted, yet such contributory negligence, if any, will not bar or prevent recovery by the plaintiff under the second instruction; but in such event the damages, if any, shall be diminished by the jury in proportion to the amount of negligence, if any, attributable to the said John G. Holloway by reason thereof. So that the plaintiff will not recover full damages but only a proportional part bearing the same relation to the full amount as the negligence attributable to the defendant bears to the entire negligence attributable to both the said Holloway and the defendant."

The principal ground, however, urged for reversal is that the damages are excessive. On the subject as to what damages might be allowed, the court told the jury that if they found for plaintiff, the measure of recovery was "such an amount in damages as will fairly and reasonably compensate the widow of the said John G. Holloway, deceased, for the loss of pecuniary benefits she might reasonably have received if the deceased had not been killed." This instruction of course was to be read in connection with the instruction on contributory negligence, under which the jury was authorized, if they believed the deceased was guilty of such negligence, to diminish the amount of the recovery according to the rule laid down in the instruction on this subject.

The Supreme Court of the United States in North Carolina Ry. v. Zachary, 232 U. S., 248, 58 L. Ed., 591; Michigan Central R. R. v. Vreeland, 227 U. S., 59, 57 L. Ed., 417; Gulf, Colorado, etc. Ry. v. McGinnis, 228 U. S., 173, 57 L. Ed., 785; Garrett v. L. & N. R. R., 235 U. S., 308, 59 L. Ed., 242; Southern Ry. v. Leslie, 238 U. S., 599, 59 L. Ed., 1478, and in many other cases has

held that the damages are limited to the pecuniary loss sustained by the beneficiary, and the instruction on this subject was correct, as it limited the jury to the ascertainment of such a sum as would compensate the widow for the loss of the pecuniary benefit she might have received if the deceased had not been killed.

Counsel for the company argue that the wording of this instruction was "calculated to mislead the jury and to induce them to allow the widow for the damage done to the decedent's estate as well as for the damage she sustained individually;" but we do not think the instruction is at all susceptible of this construction or that the jury could have understood in assessing the damages that they might estimate the loss suffered by the decedent's estate as well as the loss sustained individually by the widow. If an instruction phrased as this one was does not state correctly the measure of recovery, it would be difficult to frame one that would.

If the jury, as urged by counsel, assessed the damages at too large a sum or allowed the widow, as is said, an amount largely in excess of the pecuniary loss she sustained, this finding cannot be attributed to any fault in the instruction; nor are we prepared to say that under the evidence and the reasonable inference to be drawn therefrom, the amount awarded is substantially more than the facts justified.

In order that the facts before the jury furnishing the data on which the assessment was made, may be understood, we think it well to set out briefly what the record shows on this subject. The deceased, Holloway, at the time of his death was thirty-four years old. He was in perfect health and a man of exceptionally fine habits. He was sober, capable, industrious, ambitious and saving; devoted to his wife and fond of his home life. He started with the company as a laborer and was promoted from time to time until, in the course of a few years, he had reached the position of a regular locomotive engineer. During the first years of his married life he had only been getting from fifty to one hundred dollars a month, but after this his salary was raised to one hundred and fifty dollars a month, and a few months before his death he had been promoted to the place of regular engineer and was earning over two hundred dollars per month. He had been married about four years and a half to the woman he left a widow, and who

had no income or means of support during their married life other than such as she received from her husband. It was his habit when he received his wages, which was paid in money each month, to take it home and give it to his wife, who put it in a bank to their joint credit, only using such part as was needed for their living expenses.

At the time of his death she had on deposit to their joint credit about eight hundred and fifty-five dollars that had been saved from his earnings; and in addition to this there was about three hundred and twenty-five dollars due to him from the company as his wages for about a month and ten days before his death. It might also be properly stated here that the bank deposit was the savings from his salary after it had reached one hundred and fifty dollars and then two hundred dollars per month, as previous to that time his salary had only been from fifty to one hundred dollars per month, so that until within a few months before his death little could be saved after paying the living expenses. It may therefore safely be said that he had saved out of his wages over eleven hundred dollars, the amount on deposit and due him from the company, in the last year of his life after paying the living expenses of himself and his wife.

This brief statement shows in a very striking way the fine character of man the deceased was, and gave to the jury, as we think, the right to give to his widow as compensation the very largest sum that a fair estimate of the pecuniary loss she sustained would justify.

Now what was her reasonable expectation of pecuniary benefits if her husband had lived his allotted time, which, according to the Wigglesworth Tables, was something over 28 years and according to the Carlisle Tables something over 31 years or say 30 years? Or, stating it in another way, what was the sum of the pecuniary loss she sustained on account of his death? We think that in estimating his earning capacity it is fair to assume, considering his character, habits and health, as well as his capability, that his earning capacity in the line of his employment would at least not be decreased and that if any change were made it would be increased. But putting it at two hundred dollars a month, or twenty-four hundred dollars a year, if he lived his allotted time, and followed his avocation he would have earned seventy-two thousand dollars. If he should have earned in this period on an

average of only one hundred. and fifty dollars a month, the sum of his earnings would be fifty-four thousand dollars. Or if his average wages should have been only twelve hundred dollars a year, he would have earned in this time thirty-six thousand dollars. Looking, therefore, at the matter from the standpoint of these figures, it is apparent that the probable pecuniary loss was very large.

In Michigan Central R. R. Co. v. Vreeland, 227 U. S., 59, 57 L. Ed., 417, the court said, in discussing the meaning of pecuniary loss: "The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived. Compensation for such loss manifestly does not include damages by way of recompense for grief or wounded feelings.  *  *  * A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, 'not only to express the character of that loss to the beneficial plaintiffs which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.' "

In Tiffany on Death by Wrongful Act, section 158, in discussing the word "pecuniary" in statutes like the one here in question, it is said: "The use of 'pecuniary' to designate the kind of loss for which recovery can be had is misleading, for the damages are by no means confined to the loss of money, or of what can be estimated in money. As will be seen, damages are recoverable for the loss of the services of husband, wife and child, and also for the loss by a child of the care, education and counsel which he might have received from his parents. The word has been used rather for the purpose of excluding from the recovery damages to the feelings and affections than of confining the damages strictly to those injuries which are 'pecuniary,' according to the ordinary definition."

And in section 160: "The pecuniary loss which a wife sustains by the death of a husband, and which a minor child sustains by the death of a father, necessarily

includes the loss of support which the deceased owed them respectively. The measure of damages is the amount which the deceased would probably have earned during his life for their benefit, taking into consideration his age, ability and dispositon to work, and habits of living and expenditure. To this may be added, according to some cases, the amount which he would probably have accumulated, and which they might reasonably have expected to inherit.''

But counsel for the railroad company argue that under no state of case should the recovery have exceeded $17,166.00. They get this amount by multiplying the life expectancy of the deceased by fifty dollars a month, or six hundred dollars a year, that being the annual sum it is claimed the husband was contributing for the support of his wife at the time of his death.

We do not of course know by what method of calculation the jury arrived at the amount awarded, but if in reaching a conclusion they considered, as they had a right to do, the amount in excess of living expenses received by the widow out of her husband's wages when he was getting a hundred and fifty and two hundred dollars a month, the pecuniary loss she sustained should not be limited to the amount required for her support and maintenance, because he gave her all of his wages, and the savings were put in bank to their joint credit. So that it may fairly be said that at the time of his death she was receiving as pecuniary benefits from him not only her support and maintenance of fifty dollars a month, but in addition thereto one-half of the savings; or, in other words, one hundred dollars a month. Under these conditions the jury might well have considered that the pecuniary loss sustained by the widow was one hundred dollars a month, or twelve hundred dollars a year, which would make a total sum much larger than the award.

The Federal statute does not fix any rule by which to measure the damages in cases like this, nor is there any statute in this State on this subject. So that the amount to be awarded is not controlled by any statute law. It is left to the jury to say what the finding shall be; and under the settled practice of this court their finding will not be interfered with unless it strikes the mind at first blush as being grossly excessive; or, in

other words, is so excessive as to appear to have been given under the influence of passion or prejudice.

In the consideration of this matter it will at once be perceived that it is exceedingly difficult for a court or a judge to say when a verdict in cases like this is excessive or when it is so largely more than in reason should be awarded as to justify the court in setting aside the finding of an impartial jury who are equally if not better qualified to determine questions like this than would be a judge or the court. It does not appear and is not urged that in hearing and disposing of this case the jury were influenced by either passion or prejudice. The complaint is rested solely on the ground that the assesment of damages is excessive. But if we should say that it was excessive, and that for this reason the judgment should be set aside, upon what ground should we rest our decision? Upon what ground could we with propriety interfere with the finding of that tribunal to whom the constitution and laws of this State have committed the settlement of disputed questions of fact like this? It is, as we have stated, a case presenting exceptional facts upon which a large verdict might well be sustained, and we do not feel authorized on these facts to set up our judgment against that of the jury. C. & O. Ry. Co. v. Kelly, 160 Ky., 296; C. & O. Ry. Co. v. Duyer, 162 Ky., 427.

The jury in this case had before them and had the right to consider in determining the pecuniary loss sustained by the widow the earning capacity, age, health, habits, character, occupation, expectancy of life, and mental and physical disposition to labor of the deceased. Norfolk & Western Ry. Co. v. Holbrook, 235 U. S., 625, 59 L. Ed., 392; Kansas City Southern Ry. v. Leslie, 238 U. S., 599, 59 L. Ed., 1478; Vicksburg & Meridian R. R. Co. v. Putnam, 118 U. S., 545, 30 L. Ed., 257; Richmond & Danville R. R. Co. v. Elliott, 149 U. S., 266, 37 L. Ed., 728.

They were allowed to have this data so that they might approximately at least fix the recovery in such a sum as would reasonably meet the pecuniary loss the widow had sustained. As was said by this court in C., N. O. & T. P. Ry. Co. v. Lovell's Admr., 141 Ky., 249: "Of course how long a person will live, or how much he will earn, or how much he will save, or how much he will leave at his death, are in the very necessity

of things unknown problems. No human being can tell how long any person will live, and consequently no person can say how much his estate from a pecuniary standpoint will lose by his death. But in compensating the estate of a person who has been killed by negligence for the destruction of his power to earn money, it is more just and reasonable to assume that he will live the alloted time and that he will observe habits of thrift and industry than to assume that he will be stricken with disease or become idle and worthless or die many years before his expectancy of life has ended. And so it is that in the dealing with the wrong-doer, the law requires him to give the injured person or his estate such a sum as under the most favorable conditions will compensate him or his estate for the loss occasioned by his wrongful act. * * * When the jury has before it all the evidence that either party desires to introduce, relating to the health, habits, earning capacity, character and probable duration of life of the deceased, and are then directed to assess the damages at such a sum as will compensate his estate for the destruction of his power to earn money, they have before them every fact upon which an estimate of the loss sustained can be based, and it is to be presumed that in making up their verdict the jury will take into consideration all of the facts indicated.''

The amount of damage is, as we have stated, large, but the sum is not more than has been permitted to stand by the Supreme Court of the United States in cases arising under this statute. Thus in the case of Great Northern Ry. v. Otos, decided December 13, 1915, the recovery in a state court in Minnesota of a judgment for thirty thousand dollars, damages for personal injuries sustained by a switch foreman twenty-six years old, who at the time of his injury was earning from one hundred and five to one hundred and fifteen dollars a month, was not disturbed.

And in Southern Ry. v. Bennett, 233 U. S., 80, 58 L. Ed., 860, on the trial in a state court there was a recovery for twenty thousand dollars, and on appeal the Supreme Court said: ''The argument is this: The deceased was making not more than nine hundred dollars a year, and the only visible grounds of increase was the possibility that he might be promoted from fireman to engineer, with what pay is not shown. He could not have given

more than seven hundred a year to his family. His expectation of life was about thirty years by the tables of mortality. Therefore, at the legal rate of interest the income from ten thousand dollars for thirty years was all that the plaintiff was entitled to, whereas she was given the principal of twenty thousand dollars out and out. It may be admitted that if it were true that the excess appeared as a matter of law, that if, for instance, the statute fixed a maximum and the verdict exceeded it, a question might arise for this court. But a case of mere excess upon the evidence is a matter to be dealt with by the trial court. It does not present a question for re-examination here upon a writ of error. Lincoln v. Power, 151 U. S., 436, 38 L. Ed., 224; Herencia v. Guzman, 219 U. S., 44, 55 L. Ed., 81. The premises of the argument for the plaintiff in error were not conclusive upon the jury, and although the verdict may seem to us too large, no such error appears as to warrant our imputing to judge and jury a connivance in escaping the limits of the law.''

Upon the whole case we find no reason for disturbing the judgment, and it is affirmed.