## . Liese v. Meyer, *Appellant.*

### Division One, April 1, 1898.

143 547
153 274
153 307

143 547
158 225
85a 457

143 547
162 380
89a 408

143 547
164 285

143    547
169   ¹225

1. **Marriage Contract:** PLEADING: PRACTICE: AMENDED PETITION: NEW CAUSE OF ACTION. Because the original and amended petition, exactly alike in every other respect, differ materially as to the prayer, it does not follow that the cause of action has been changed by the amendment. The cause of action is determined by the facts pleaded, and not by the relief prayed.

2. ——: ——: ——: ——: TESTS. There are two tests by which to determine whether a second petition is an amendment or a substitution of a new cause of action: *First*, whether the same evidence will support both petitions, and, *second*, whether the same measure of damages will apply to both. If these tests are answerable in the affirmative, it is an amendment; if in the negative, it is a substitution.

3. ——: ——: ——: ——: DEMURRER. A demurrer to a petition will not lie because the relief prayed is beyond the power of the court to grant, or that it is not in harmony with the proper relief upon the facts pleaded; but whatever the prayer, the court will look to the whole petition and grant such relief as the facts pleaded will authorize.

4. ——: ——: ——: ——: FILING ANSWER: WAIVER. The defendant waives his right to have the ruling of the court reviewed on. his motion to strike out plaintiff's amended petition by filing an answer thereto, even though he had previously excepted to the court's ruling and filed his bill of exceptions.

5. ——: WEIGHT OF EVIDENCE: DISCREPANCIES: JURY MATTERS. Contradictory statements and discrepancies in the testimony of plaintiff and other witnesses in a suit for damages for a breach of a marriage contract are matters for the jury to decide, and this court will not say as a matter of law that such contradictions completely destroy the force and effect of plaintiff's testimony; but if there is ample testimony to support the verdict and judgment, they will not be disturbed on appeal.

6. ——: SEDUCTION: PRESUMPTION OF INNOCENCE. In a suit by a woman for damages for a breach of a marriage contract, aggravated by seduction, there is no presumption of guilt or innocence. The issue is a question of fact, which is to be determined by the preponderance of the evidence.

Liese v. Meyer.

7. ———: ———: PRACTICE: AFFIRMATIVE DEFENSE. At the trial the defendant claimed the right to open and conclude the case. This supposably was done on the theory that, under the pleadings, the plaintiff's claim was made out and that she was entitled to a verdict unless the defendant sustained his affirmative defense. It is *held*, that the court properly overruled this request.

8. ———: ———: INSTRUCTIONS. It is not necessary that any one instruction standing alone should embrace all the issues in a case; but if all the instructions given, when read together, are harmonious and consistent and embrace all the material issues involved, no error in instructions has been committed.

9. ———: ———: ———: MISLEADING. Although an instruction for plaintiff standing alone might not be clearly understood by the jury, yet, if when read with one given on behalf of defendant, the issues are clearly set forth, the jury can not be said to be misled.

10. ———: ———: AGGRAVATION OF DAMAGES: ANSWER. An allegation in the answer that plaintiff has been guilty of impure and unchaste conduct with other men, if unproven, is in itself sufficient to justify the jury in finding defendant chargeable with bad faith in making it, and will sustain an instruction asking for an aggravation of damages on account of such an attempt to impeach her character.

11. ———: ———: MEASURE OF DAMAGES. The measure of damages in suits for a breach of a marriage contract is the injury to the plaintiff's feelings, affection and wounded pride, as well as the loss of marriage, and the seduction may be shown in evidence to aggravate the damages.

12. ———: ———: EXCESSIVE DAMAGES: PASSION. In this case it is held that $10,000 to plaintiff, for the support of herself and child, is not such excessive damages as to indicate passion, prejudice, or misconduct on the part of the jury.

*Appeal from Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*J. D Shewalter* and *Sangree & Lamm* for appellant.

(1) No amendment can change the cause of action, and whilst there is but one form of action it is still true that an action *ex delicto* can not be changed into an action for a breach of contract by amendment, nor can a cause of action be substantially · changed by amend-

ment. *Holliday v. Jackson*, 21 Mo. App. 664; *Philips v. Broughton*, 30 Mo. App. 149; *Hampkin v. Collier*, 69 Mo. 170; *Scovill v. Glasner*, 79 Mo. 452; *Field v. Maloney*, 78 Mo. 174; *Drake v. Railroad*, 35 Mo. App. 557; *Parker v. Rhodes*, 79 Mo. 88; *Board of Supervisors v. Decker*, 34 Wis. 378. (2) Where the contract of marriage, and a refusal on the part of the defendant is admitted or shown by the evidence, it is ordinarily true that the burden of proof is upon the defendant to show a legal excuse therefor. But where the plaintiff, as in this case, in her petition, affirmatively charges seduction, and as a result thereof, the birth of a child, and the defendant denies that he is the guilty party, but admits that the plaintiff was seduced and gave birth to a child, the burden is upon plaintiff to prove affirmatively the guilt of defendant. (3) An *alibi* is a defense in all cases, civil as well as criminal. Hence if the evidence showed the absence of the defendant at the very time and place of the alleged original seduction it was a defense to that charge. The evidence, including letters of the parties, show that the defendant was not present. Hence the court committed error in refusing instructions numbers 6 and 9 for the defendant. (4) Instruction 7 refused for defendant invoked a correct principle of law and was warranted by the facts of this case. The jury should have been cautioned in regard to the alleged confession of defendant, made in German two years before and translated in court. *State v. Moxley*, 102 Mo. 374; 1 Greenl. on Ev. [15 Ed.], secs. 200 and 214. (5) Again, instruction 4 given for plaintiff was, under the pleadings, admissions and testimony in this case, in direct conflict with instruction 1 given for defendant. This was reversible error. In her instruction the jury were told that the burden was upon defendant to prove his "release" (that is, the seduction by another man) and in

our instruction the jury were rightly told that the burden of proving the seduction by the defendant was on her. Such instructions are repugnant, irreconcilable and only tend to confuse and not to guide the jury. (6) Instruction 9 given for plaintiff, in so far as it allowed punitive damages because of defendant's answer denying the seduction and averring that she was seduced by someone else, was bad law under the facts of this case. Because there was total absence of evidence of "want of good faith" on defendant's part. Such evidence was necessary before such doctrine can be invoked. *Drenslow v. Van Horn*, 16 Iowa, 476. (7) On proper application plaintiff would have been entitled to an order permitting "inspection" of material papers in our possession. This should have been on due notice. R. S. 1889, secs. 2177, 2178, 2179, 2180 and 2181. Now the notice given was to produce these letters "to be used in evidence," not for inspection, and the trial court committed error when it compelled us, under the circumstances disclosed by the record, to turn these letters over to plaintiff for "inspection."

*Wallace & Chiles* and *H. F. Wieman* for respondent.

(1) There was no error in the court below in overruling the motion of defendant, appellant here, to dismiss or strike out the amended petition of plaintiff in this cause. Such amended petition did not materially or at all change the cause of action in this cause, as claimed in said motion. R. S. 1889, sec. 2074; *Winn v. Cory*, 43 Mo. 305; *Turner v. Thomas*, 10 Mo. App. 338; *Garth v. Caldwell*, 72 Mo. 622; *Donaldson v. Butler Co.*, 98 Mo. 163; *Stanfield v. Loan Ass'n*, 53 Mo. App. 595; *Biddle v. Ramsey*, 52 Mo. 158; *Elfrank v. Leiter*, 54 Mo. 136; *Russell v. Ins. Co.*, 55 Mo. 593;

*Pomeroy v. Benton*, 57 Mo. 550; *Robertson v. Railroad*, 21 Mo. App. 633; *Holt Co. v. Cannon*, 114 Mo. 514; R. S. 1889, secs. 2066, 2098, 2104, 2117, 2100, 2244 and 2055. (2) But even if the court below had erred in overruling such motion to strike out such amended petition, the defendant having abandoned the motion by answering over and going to trial on such amended petition, has waived such error, if any, and can not insist upon it on appeal. *Scovill v. Glasner*, 79 Mo. 449; *Silver v. Railroad*, 21 Mo. App. 5; *Sauter v. Leveridge*, 103 Mo. 615; *Holt Co. v. Cannon*, 114 Mo. 519. (3) For tests by which to determine whether a second petition is an amendment or a substitution of a new cause of action, see *Scovill v. Glasner*, 79 Mo. 449; *Lottman v. Barnett*, 62 Mo. 159; R. S. 1889, secs. 2074, 2098, 2104 and 2109; *Blair v. Railroad*, 89 Mo. 383. (4) A suit for breach of promise to marry as well as a suit for seduction under promise of marriage both sound in damages. They are not suits on or to enforce the contract, but suits for damages for the breach of a contract. *Burnham v. Cornwell*, 63 Am. Dec. and note 548; *Owen v. Railroad*, 95 Mo. 176; *Weber v. Hannibal*, 83 Mo. 262; *Price v. Ins. Co.*, 3 Mo. App. 262; R. S. 1889, sec. 2074; *Carr v. Moss*, 87 Mo. 450; *Winn v. Cory*, 43 Mo. 305. (5) As the law now stands, damages are recoverable for a breach of promise of marriage, and if seduction has been practiced under color of that promise the jury will undoubtedly consider it as an aggravation of damages; so far the law has provided and we do not profess to be wiser than the law. *Paul v. Frazier*, 3 Mass. 71; *Green v. Spencer*, 3 Mo. 227; *Cole v. Holliday*, 4 Mo. App. 94; *Clements v. Moore*, 11 Ala. 36; *Wells v. Padgett*, 8 Barb. 324; R. S. 1889, secs. 2055, 2066; *Ibid*, sec. 2113; *Willard v. Stone*, 7 Cow. 22; *Roper v. Clay*, 18 Mo. 383; *Davis v. Stagle*, 27 Mo. 600; *Kriffin v. McConnell*, 30 N. Y. 285. (6) Where

a defendant in his answer attempts to justify his breach of promise of marriage by stating therein and thus placing upon record as the cause of his deserting the plaintiff that she has had criminal intercourse with various persons and fails to prove it, the jury have a right to take this circumstance into consideration in aggravation of the damages to which plaintiff may be entitled. *Thorn v. Knapp*, 42 N. Y. 475; *Southard v. Rexford*, 6 Cow. 254. An action for breach of contract of marriage is an exception as to the rule of damages to that in ordinary suits on contracts. (7) As to the measure of damages, this action has always been classed with actions of torts, as libel, slander, "seduction," criminal conversation, etc. *Thorn v. Knapp*, 42 N. Y. 477; *Wells v. Padgett*, 8 Barb. 323; Sedg. on Dam. [6 Ed.], 368; *Burns v. Buck*, 1 Lans. 268. (8) There was no error in the court below in awarding the opening and closing of the case to the plaintiff. *Buckley v. Knapp*, 48 Mo. 152. (9) The damages awarded plaintiff by the jury were not excessive. This court will not reverse a judgment for excessive damages unless in a very clear case. *Woodson v. Scott*, 20 Mo. 272.

MARSHALL, J.—The plaintiff sued the defendant on the eleventh of March, 1893, for damages for breach of contract of marriage, aggravated by seduction. The original petition fixed the year 1889 or 1890 as the date of the mutual agreement to marry, and charged that while the agreement was in force, "to wit: on or about the first day of August, 1891," the defendant seduced her, and on several occasions thereafter down to and including the fifteenth day of August, 1891, while the agreement was still in force, he continued to debauch her, in consequence of which she became pregnant, and was, on the fifteenth of May, 1892, delivered of a

female child, which is still living; that she was always and still is willing to marry defendant, but he refused so to do. The prayer of the petition was, "Wherefore, by reason of the said seduction of plaintiff by defendant under promise of marriage, as aforesaid, the carnal knowledge of and pregnancy of plaintiff and the child-bearing consequent thereon, she was brought into public scandal, infamy and disgrace among her neighbors, greatly wounded in her womanly pride and sensibility, had suffered great bodily pain and mental anguish, was left with an infant daughter on her hands for support, and her prospects for life and eligible marriage blasted, to her great injury and damage in the sum of ten thousand dollars, for which with costs she asks judgment."

The defendant answered, admitting the contract to marry the plaintiff and the birth of the child, but denied the other allegations of the petition. He then set up a specific, affirmative defense, claiming that he had often urged plaintiff to fulfill her promise to marry him, but that, from time to time, she put off the marriage up to the time of giving birth to the child, about May 13, 1892, and averring that at some time during the continuance of the marriage contract, the exact date being unknown to him, the plaintiff without his knowledge, had sexual intercourse and connection with some man or men unknown to him and as a result became pregnant, "which fact she kept concealed from defendant up to and even after the birth of the child; that at all times the defendant treated the plaintiff with respect, and ignorant of her conduct and condition urged her to marry him, but that he never at any time had sexual intercourse with the plaintiff and hence is not the father of the said child. That by reason of the premises he was released and discharged from his promises and marriage agreement with the plaintiff."

The reply denied generally the new matter set up in the answer.

When the case came on for trial at the December term, 1893, and after the jury was impaneled, the defendant objected to the introduction of any evidence, claiming that the petition did not state facts sufficient to constitute a cause of action; that the suit was for seduction and not for breach of a promise of marriage. The court sustained the objection, plaintiff took leave to amend, and the cause was continued. In due time the plaintiff filed an amended petition, which was substantially the same as the original petition except that the prayer was changed so as to read: "Wherefore, by reason of the premises and the breach of the said contract of marriage by defendant, the plaintiff has sustained damage in the sum of ten thousand dollars for which with the costs of this action plaintiff prays judgment against the defendant." The defendant filed a motion to dismiss or strike out the amended petition, "for the reason that the same was not properly an amended petition in that it materially changes the cause of action from one *ex delicto* to one for a breach of contract." The court overruled the motion, and defendant filed his bill of exceptions. The defendant then filed an answer to the amended petition, which was identically the same as his answer to the original petition, and the plaintiff replied generally.

The case was tried before the court and a jury, and a verdict and judgment entered for the plaintiff for $10,000, the full amount claimed in the petition. The defendant appealed.

I.   The first ground relied on by defendant to reverse the judgment is the refusal of the circuit court to dismiss or strike out the amended petition, and it is argued that the first petition was an action *ex delicto*

for seduction, while the amended petition presented a case for damages, *ex contractu*, for breach of a contract of marriage.    Under the Code in Missouri (R. S. 1889, sec. 2039), the petition is required to be "a plain and concise statement of the facts constituting a cause of action," and this, too, whether the facts pleaded would entitle the plaintiff to legal or equitable relief (*Clark v. Clark*, 86 Mo. 114). With the exception of the prayer for relief the facts stated in the original and in the amended petition are exactly the same.    The fact that in the prayer of the original petition the seduction was made prominent as the basis of plaintiff's damage, while in the amended petition the breach of the contract to marry was solely relied on, did not change the form of action.    The statute (R. S. 1889, sec. 2039) provides that the petition shall contain "a demand of the relief to which the plaintiff may *suppose* himself entitled," but this does not define or control the character of the action.    The motion to dismiss or strike out the amended petition was no broader than a general demurrer would have been, and it is the settled rule in this State that a demurrer to a petition will not lie because the relief prayed is beyond the power of the court to grant, or that it is not in harmony with the proper relief upon the facts pleaded, but the court will look to the whole petition and grant such relief as the facts pleaded will authorize.    *Crosby v. Bank*, 107 Mo. *loc. cit.* 442; *Muenks v. Bunch*, 90 Mo. 500; *Kerr v. Simmons*, 82 Mo. 269; *Newham v. Kenton*, 79 Mo. 382; *Saline Co. v. Sappington*, 64 Mo. 72; *McClurg v. Phillips*, 49 Mo. 315; Bliss, Pl., sec. 334. Disregarding the prayer of the petition there is absolutely no material difference between the original and amended petitions.    There are two tests by which to determine whether a second petition is an amendment or a substitution of a new cause of action:    *First*, whether the

same evidence will support both petitions, and, *second*, whether the same measure of damages will apply to both. If these questions are answerable in the affirmative, it is an amendment; if the negative, it is a substitution. *Scovill v. Glasner*, 79 Mo. 449; *Sauter v. Leveridge*, 103 Mo. *loc. cit.* 621; *Holt Co. v. Cannon*, 114 Mo. *loc. cit.* 519. Applying these tests to this case it is perfectly plain that the same evidence would support both petitions and the same measure of damages would apply to both. It was clearly therefore an amendment and not a change of the cause of the action, nor a substitution of a new cause of action. There was no error in the refusal of the court to dismiss or strike out the amended petition.

After the court overruled the motion to strike out, the defendant filed an answer, and the case was tried on the issues joined. This was a waiver of the defendant's right to have the ruling of the court on the motion to dismiss reviewed by this court. *Scovill v. Glasner*, 79 Mo. 449; *Pickering v. Tel. Co.*, 47 Mo. 457; *Sauter v. Leveridge*, 103 Mo. *loc. cit.* 621; *West v. McMullen*, 112 Mo. *loc. cit.* 409; *Holt Co. v. Cannon*, 114 Mo. *loc. cit.* 519.

II. It is not our practice to weigh the evidence in a case, nor to try to settle alleged discrepancies in the testimony. That duty belongs to the jury. There was abundant and convincing testimony to sustain plaintiff's contention. The issues were simple. The contract of marriage and the birth of the child were admitted by the defendant. The plaintiff alleged seduction, under promise of marriage, by defendant, her readiness to marry him and his refusal. The defendant denied the seduction, and then as an affirmative defense alleged that plaintiff had sexual intercourse with other men, in consequence of which she became pregnant; that she concealed her condition

from him until after the birth of the child, and he, in ignorance of the fact, urged her to marry him, but that her said conduct with other men released and discharged him from his promise and agreement.

Thus the issues tendered by the plaintiff were clear and simple. Those presented by the defendant were serious and grave. If his charges were true, he is indeed to be pitied. If they were not true, they were cowardly, unmanly and deserved the severest condemnation, for they involved much deeper disgrace than naturally flows from the fall of a virtuous woman at the hands of her affianced lover. They had been engaged at least a year and a half before the alleged seduction. There is no evidence whatever against her character or her virtue prior to or during the engagement. She is not shown to have received any other visitors. She had no other lovers. Her conduct appears to have been that of a pure, circumspect and Christian woman, free from frivolity or even ordinary feminine coquetry. If she loved, trusted her lover and fell, it is but "the same old story" of woman's trust and man's perfidy. If, however, as charged by the new matter of the answer, the plaintiff, while the promised wife of the defendant, conceived and bore a child by another man, she is destitute of those finer sensibilities which belong to and adorn a true woman, and is therefore a moral degenerate, and unworthy of common sympathy. These were the issues the jury tried. For the defendant it is claimed that one witness, Waulk, testified, "that the summer preceding the birth of the child, between Corder and the home of the plaintiff, he saw her and a strange man have improper relations." What the witness Waulk actually said was this: That one Sunday evening he was sitting on a pile of tiling on the railroad, in a cut near the Liese house, when, "I saw two persons coming up the road; it was

twilight; and nearly dark. . . . . . . . *A*. Well, I saw those parties in a compromising condition. *Q*. A man and a woman? *A*. Yes, sir. *Q*. Did you know the man? *A*. I did not. *Q*. Did you know the woman? . . . . . . . *A*. Well, my *impression* at that time was that it was Miss Lena Liese.'' On cross-examination, after stating that he could give no description of the man or the woman, or how they were dressed, he was asked this question: "*Q. Do you swear to this jury that was Miss Lena Liese?*" And he said: "*A*. No sir, not positively i don't." In rebuttal plaintiff emphatically denied the foregoing testimony of Waulk.

Outside of defendant's denial of having seduced plaintiff, the foregoing is absolutely the *only* testimony offered by defendant in support of the affirmative defense set up by him. To sustain the issues on her part, the plaintiff testified, with apparent candor and truthfulness, to all the material facts pleaded by her, and her testimony was not shaken on cross-examination. In addition she offered the testimony of other persons who swore that the defendant admitted he had intercourse with the plaintiff, but denied that he was the father of the child, because "*his intercourse with her did not meet the date of the birth of the child.*"

Defendant, however, claims that plaintiff puts the date of the first seduction on the first Sunday in August (which was the second day of August), 1891, and he insists that his letter to her dated August 2, 1891, at Lexington, shows that he was not with plaintiff at all on the day of the alleged seduction, and that her letter to him, dated August 3, 1891, at Corder, shows that on the evening of August 2, she attended a lecture by a Japanese convert, and that defendant was not with her. He answers her further testimony that the offense was repeated about two weeks later, and again in September, by claiming that if she is shown

to have sworn falsely as to what occurred for the first time on the second of August, her testimony as to the two subsequent happenings should be disregarded. It is true that the record contains the two letters referred to and it is likewise true that in her direct examination plaintiff located the first offense as having taken place, *"the first part of August,"* while on cross-examination she said: *"Q.* It was the first Sunday in August, in 1891, that is true, is it not? *A.* Yes, sir.*"* But it is also true that she fixed the time as an occasion when he came to see her on Saturday, stayed over Sunday, and went away Monday. It is plain, therefore, that the time, as well as the offense charged, was a question for the jury to decide. We can not say, as a matter of law, that the discrepancy between the facts indicated by the dates of these letters and the time fixed by the plaintiff on cross-examination, completely destroys the force and effect of all the testimony in the case for the plaintiff, nor that it is sufficient to warrant this court in setting aside the verdict of the jury and the judgment of the circuit court. These discrepancies were doubtless urged at the trial, and it was the province of the jury to give them all possible consideration.

A careful examination and analysis of the evidence satisfies us that there is ample testimony to support the verdict and judgment, and whenever this is the case the uniform practice of the court is not to disturb the finding. *State v. Breeden*, 58 Mo. 507.

III. Defendant contends that the court erred in giving plaintiff's instructions numbered 4 and 9, and in refusing to give certain instructions asked by defendant. The fourth instruction given for plaintiff was: "If the jury believe and find from the evidence that defendant promised the plaintiff in good faith to marry her, and that she accepted him, the burden of proof rests upon him to establish by a preponderance

of the evidence, a defense or release, and that it would not be a defense that he had improper relations with her, either before or after such promise."

It is claimed that the defendant is presumed innocent until his guilt is proved, and that the burden of proof does not shift to defendant in an action of this character. There is no presumption of guilt or innocence in such cases as this. It is a question of fact to be proved by a preponderance of the testimony. At the beginning of the trial the defendant claimed the right to open and conclude the case. This must have been upon the theory that under the pleadings the plaintiff's claim was made out and that she was entitled to a verdict unless the defendant sustained his affirmative defense. The court properly overruled this contention. In view of this contention it is hard to understand this criticism.

The instructions of the court must be taken together. They constitute a whole charge. If taken as a whole they present the issues fairly and are not calculated to mislead the jury, they are unobjectionable. *Easley v. Railroad*, 113 Mo. 236; *Burdoin v. Trenton*, 116 Mo. 358; *Henry v. Railroad*, 113 Mo. 525. It is not necessary that any one or more instructions standing alone should embrace all the issues, but if all of those given, when taken and read together, are harmonious and consistent, embracing all the material issues involved, it is sufficient. *Shaw v. Dairy Co.*, 56 Mo. App. 521; *Ridenhour v. Railroad*, 102 Mo. 270; *Dickson v. Railroad*, 104 Mo. 491; *O'Connell v. Railroad*, 106 Mo. 482; *Voegeli v. Pickel, Etc., Co.*, 56 Mo. App. 678. Standing alone, the instruction above quoted might not be entirely understood by the jury, but when taken in connection with the first instruction given for defendant it is unobjectionable. That instruction was: "It is charged in the petition in this

cause by way of aggravation of the alleged damages, that defendant under promise of marriage seduced plaintiff. This charge is denied in appellant's answer. Upon the issue thus raised by the pleadings, the court instructs the jury that the burden is upon the plaintiff to show by a preponderance of the evidence that the defendant did actually seduce the plaintiff under such promises; and unless the plaintiff, Lena Liese, has established that fact by such preponderance of evidence, then the jury should find for the defendant on that issue. By the terms preponderance of the evidence as used in these instructions is meant evidence which in your judgment is entitled to the greater weight in respect to its credibility.'' Read together any juror would easily understand that the burden of proof rested upon the plaintiff to prove the contract of marriage, the seduction by defendant and the breach of the contract, and that the burden was on the defendant to prove that the plaintiff had improper relations with other men which resulted in other paternity for the child. The jury could not have been misled by these two instructions taken together.

The portion of the ninth instruction complained of by defendant is as follows: "And if the jury believe from the evidence that defendant seduced plaintiff under promise of marriage as set forth in the fifth instruction above, and that defendant by his answer in this cause and by evidence offered by him, attempted, but not in good faith, but as a mere defense to this suit, to impeach and injure the character of plaintiff for chastity and purity, then the jury may also consider these facts in aggravation of the damage of plaintiff, if they find for the plaintiff.'' The only objection made to this is that there was no evidence to base the instruction upon. The charge related to

the new matter set up in the answer. There was no evidence, worthy of the name of evidence, adduced by defendant to sustain this allegation of the answer, for the only witness who was called to prove the allegation, Waulk, failed to swear to the fact. Under these circumstances the allegation and the failure to prove it was, in itself, a sufficient circumstance to justify the jury in finding bad faith in making the plea, and the averment in the answer unsustained by any proof, was a most serious aggravation of the damages sustained by the plaintiff. *Thorn v. Knapp*, 42 N. Y. 474.

Error is charged in the refusal of the trial court to give instructions asked by the defendant. Without specifying each, it is enough to say that they were properly refused, either because they singled out a particular fact and gave prominence to it, or because the propositions they state were substantially covered by other instructions given. *Railroad v. Stock Yards Co.*, 120 Mo. 541; *Steinwender v. Creath*, 44 Mo. App. 356.

IV. The measure of damages in cases of this character is the injury to the plaintiff's feelings, affection and wounded pride, as well as the loss of marriage (*Wilbur v. Johnson*, 58 Mo. *loc. cit.* 603), and the seduction may be given in evidence to aggravate the damages. *Green v. Spencer*, 3 Mo. 318; *Hill v. Maupin, Id.* 324; *Wilbur v. Johnson, supra; Bird v. Thompson*, 96 Mo. 428.

The sum allowed the plaintiff, $10,000, is not, under the circumstances of this case, so excessive as to indicate passion, prejudice or misconduct of the jury. It is a sum, capitalized at six per cent per annum, sufficient to yield her $50 a month, which can scarcely be looked upon as an extravagant amount for the support of herself and child.

We are therefore of the opinion that the judgment of the circuit court should be affirmed. It is so ordered. All of the judges of this division concur.