GEORGE B. McADOW, Respondent, v. KANSAS CITY WESTERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 2, 1916.

1. NEGLIGENCE: Pleading: Original and Amended Petition: Departure: Answer: Waiver. If an original petition declares a common-law action for damages for personal injury and an amended petition is filed declaring on a statutory action for that injury, and a second amended petition is filed declaring on the Employer's Liability Act of Congress, it was *held* that the first amended petition was a departure from the original, and the second was a departure from the first amendment. But as the defendant filed its answer and went to trial on the merits, it waived the departure.

2. ———: ———: Departure: State Law: Federal Courts. A question of departure in pleading from an action in a State Court on a State statute for personal injury, to an action on the law of Congress known as the Employer's Liability Act,

is one of pleading and practice and is governed by the State law, which is followed by the Federal Courts.

3. ———: Railways: Interurban Electric Line: Interstate Commerce. Where an interurban electric railway carries , passengers in cars from points in one State to a point near the State line and then transfers the cars with passengers to a street railway track, thence run into another State by the motorman of the interurban company, a conductor in the employ of the street railway taking charge of the car for the purpose of collecting five cent fares to be divided between the two companies, under a traffic arrangement, and the cars receive passengers in the latter State for points in the former State and then is run back into the first State by the same motorman; the schedule, orders, and general directions being issued by the interurban road; it was *held* that the latter was engaged in interstate commerce.

4. ———: ———: ———: .Street Railway: Railroad. An interurban electric car line carring passengers and operated on time table and orders from points in one State to the State line and thence transfers its cars, with passengers, to a street railway track to be taken by the former's motorman into another State, then to receive passengers and loop back to the first state, is a railroad within the meaning of the interstate commerce law, and is engaged in interstate commerce. The street railway being no more than the interurban road's terminal facility.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*C. F. Hutchings* and *McCabe Moore* for appellant.

*Atwood & Hill* for respondent.

ELLISON, P. J.—Defendant is a corporation, and, as plaintiff charges, is maintaining and running a line of cars between Kansas City, in the State of Missouri, and Leavenworth, in the State of Kansas, which cars are propelled by electricity, and are known as electric cars. Plaintiff was motorman engaged in operating one of the passenger cars, and was injured

in a collision with another car coming in an opposite direction to that in which plaintiff was going. He brought this action for damages, charging that defendant was negligent in giving such orders as caused the cars to meet at full speed. He recovered judgment in the trial court.

An important preliminary question, regardless of the merits, has been presented for determination. The original petition appears to be an ordinary common-law action. It is alleged therein that defendant was "a common carrier of passengers for hire, owning, operating, and maintaining a line of electric railway extending from Leavenworth, Kansas, in a southeasterly direction through the town of Wolcott, Kansas, south into and through Kansas City, Kansas, and into Kansas City, Jackson county, Missouri." It was also alleged in that petition that on the 18th of December, 1911, plaintiff "was operating a car belonging to defendant known as passenger car No. 21, running in a northerly direction between Kansas City, Kansas, and Leavenworth, Kansas," when the collision occurred.

Afterwards plaintiff filed an amended petition, in which he alleges that his cause of action accrued in the State of Kansas, and that it was founded upon the statute of that State which is duly pleaded. Defendant moved to strike out this amended petition, on the ground that it was a departure from the original. But before a ruling was had he asked and obtained leave to file a second amended petition, in which he alleged that defendant was an interstate railroad, and based his cause of action on the law of Congress known as "An act relating to the liability of common carriers by railroads to their employees in certain cases," commonly known as the "Employers' Liability Act." Defendant then filed a motion to strike out this petition, on the ground that it was a departure from the original and from the first

amended petition. This motion was overruled, and defendant took and preserved its exception to the ruling. Afterwards defendant filed its answer to the last petition, consisting of a general denial, a plea of contributory negligence, and the departure, and the cause was tried with the result as stated above.

Defendant now insists that plaintiffs first amended petition was a departure from law to law, that is, from the common law in the original to the statute of Kansas in the amendment, and again a departure from law to law, in that the second amendment was an abandonment of the causes of action as alleged in the two preceding petitions.

We will concede the departure as claimed by defendant, and that ordinarily it would be a fatal error to allow plaintiff to recover judgment on a cause of action different from that originally set up. But, under the rules of practice and pleadings in this State, defendant waived the objection by answering to the merits of the action finally pleaded, and going to trial thereon. [Scovill v. Glasner, 79 Mo. 449; Liese v. Meyer, 143 Mo. 547, 556, 45 S. W. 282; Dakan v. Chase Mercantile Co., 197 Mo. 238, 270, 94 S. W. 944; Cook v. Globe Printing Co., 227 Mo. 471, 525, 127 S. W. 332.]

That such objection may be waived, and a proper trial be had, and a valid judgment be rendered would appear to be clear. The court had jurisdiction of the action as finally alleged, and the parties appeared. If the defendant had made no objection to the second amended petition, or, if making objection, had not taken any exception to the court's ruling, as by the rules of practice it is required to do, such course would certainly have been a waiver of any error in that respect. And, under the rules of practice and pleading in this State, defendant in effect did that.

But defendant insists that the judgment rendered was obtained under the provision of the law of Con-

gress, and that the decision of the Supreme Court of the United States, and not the State court, must be regarded in determining the question. We grant this, and our opinion that, in matters of pleading and practice, the rule applied in the State court where the trial is had, controls is founded on decisions of that court. Thus Brinkmeir v. Railway Co., 224 U. S. 268, 32 Sup. Ct. 412, 56 L. Ed. 758, was a case originating and tried in the courts of Kansas. It was appealed from the Supreme Court of that State to the Supreme Court of the United States. There the action was originally brought under the general law, and, after pending some time, the plaintiff asked leave to amend so as to state a cause of action under the Federal Liability Act. But in the meantime, the Statute of Limitations under that act having run against the action, the leave was refused. This ruling was sustained by the Supreme Court of that State (81 Kan. 101, 105 Pac. 221), and on appeal the Supreme Court of the United States said this: "The plaintiff sought to amend his petition by charging that the cars were used in moving interstate traffic; but the application was denied, the period of limitation having expired in the meantime. Error is assigned upon this ruling; but, as it involved only a question of pleading and practice under the laws of the State, it is not subject to review by us."

Defendant relies upon Union Pac. Ry. Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983. That case, though begun in a State court, was removed to the Federal court, and there tried. The case is not authority for defendant. The question here was not there involved or suggested. It was there decided that an amended petition setting up a cause of action on a statute was a departure from an original petition founded on the common law; that the two causes of action were different; and, though the first was within the period of the Statute of Limitations, if the statute had run as to the second before the amendment was

made, the amendment could not be tacked to the original, and the second was barred. The fact that the amendment "was wholly different" (that is, a departure) from the original was pleaded in the answer in that case (158 U. S. 287, 15 Sup. Ct. 878, 39 L. Ed. 983), and it is in no way applicable to the matter we are now considering, except that it does announce the rule contended for by plaintiff, that a question of departure is one of pleading (158 U. S. 296, 15 Sup. Ct. 877, 39 L. Ed. 983), and we think it to be inferred from what is there said that it will be governed by the State law. The point is ruled against defendant.

We proceed to consider the case on the amended petition free of the objection we have just discussed. We will not attempt to state the evidence of defendant's negligence in detail; suffice it to say that plaintiff, on the morning of the day he was hurt, was ordered by defendant's proper officer "to go to Missouri" from where he was in Kansas when he received the order. The order meant for him to take his car over the street car tracks of the Metropolitan Street Railway Company, with which defendant had a traffic arrangement, across the State line into Missouri, and up into the business section of Kansas City, Missouri, and Tenth and Main streets, and there loop back across the State line again into Kansas, and thence on to Leavenworth, Kansas, a distance of near forty miles. Plaintiff obeyed this order, and, after passengers were received at Tenth and Main streets, he proceeded back over the street railway tracks across the State line into Kansas City, Kansas. There he received an order from defendant to "meet one car at Grandview and report at Bethel," which latter place was about four miles further on. At Bethel, plaintiff received this further order from defendant: "Come to Wolcott and come as quick as you can." It was a foggy morning; and shortly before reaching Wolcott, and while going

at a rapid rate of speed, he collided with a passenger car coming in an opposite direction, and bound for Kansas City. The evidence tended to show that plaintiff had a right to expect a clear track, and that the other car should not have left Wolcott until his car arrived there. There was no substantial evidence of contributory negligence on plaintiff's part, and no issue of that character was submitted to the jury.

The instructions offered by defendant and refused by the court were drawn upon the idea that the traffic contract between it and the Metropolitan Street Railway Company, whereby its cars ran over the tracks of the latter company across the State line into Missouri, did not constitute it a carrier of interstate commerce. So it is said that the evidence as to the contract between defendant and the street car company failed to show it was an interstate carrier.

While the traffic contract states that the street car company received defendant's cars at a point across the State line in Kansas, and transported them over its tracks into Kansas City, Missouri, and then back to the point of receiving them, and there delivered them to the defendant, yet, in point of fact, the only connection the street car company had was in furnishing the electric power, and in placing one of its conductors in charge of the car at the point in Kansas connecting the tracks of the two companies, who remained with it for the purpose of collecting five-cent fare from each passenger from that point into Kansas City, Missouri, and a like sum from the latter place back to the point of connection. We find from evidence, practically undisputed, that defendant's motormen ran the cars over the street car tracks into Missouri and back again; that such servants were employed and discharged by defendant, and were under its orders, and were paid by it; that passengers were received hourly in Missouri for points in Kansas, and in Kansas for Kansas City, Missouri. The traffic

arrangement contract stated and adjusted the compensation to be paid the street car company, and provision was made therein for protection and imbursement of the street car company for any negligence of defendant's servants in operating its cars over its tracks. The evidence shows that defendant ran its cars on its schedule and time-table between the northern terminus at Leavenworth, Kansas, and the southern terminus at Kansas City, Missouri. Passengers for Kansas points boarded its cars at Kansas City, Missouri, and, while conductors were changed at the State line, its motormen took the cars from Kansas City under its orders, and on its time-table, to the northern terminus. And passengers for Kansas City, Missouri, boarded its cars at Leavenworth, Kansas, and were taken by its motormen to Missouri; a change of conductors again occurring near the State line. We consider these facts left no doubt that defendant was engaged in interstate commerce, and the court was justified in refusing its instructions.

But objections were made to parts of the evidence which have afforded us the foundation for the foregoing observations. The principal of these related to the court admitting the evidence of Egan, who was president of the Metropolitan Street Railway. As has been already stated, that road had a traffic arrangement with defendant, whereby it got its cars into and out of Kansas City, Missouri, which purported to be evidenced by a written agreement. After the agreement was made, the street railway company was placed in the hands of receivers, and it was after the receivership that plaintiff was injured. Egan was president of the company for a time before the receivership, as well as afterwards. He was asked if he hired plaintiff as motorman, and he said, "No." He also testified that the street railway did not own defendant's cars. After having Egan state that the traffic arrangement between the two companies was

in writing, defendant objected to these statements, and also moved to strike them out. The trial court overruled the objections, and refused the motion.

Afterwards defendant offered this written agreement, as well as a ''written modification'' of it, and they were admitted by the court. These instruments practically verify all that was said orally by Egan. From them it appears that ''whereas, the parties hereto deem it to be to the mutual advantage that the suburban cars of the Leavenworth company (defendant) shall be taken, moved, and transported over the tracks of the party of the second part (street railway) . . . from point of present intersection in Kansas City, Kansas.'' In section 3 of the agreement it is provided that defendant shall deliver its cars to the street railway to be transported to Kansas City, Missouri. Section 5 recites that the street railway ''agrees to operate'' the defendant's cars over the route designated into Missouri. Section 6 provides that each shall be liable for the negligence committed by its agents and servants in running the cars of the defendant over the street car tracks. Section 7 provides for a division of the five-cent fare per passenger collected by the street railway. Section 8 provides that local street railway passengers shall be allowed to ride on defendant's cars except when defendant's passengers are occupying all the seats. Section 15 provides for a change in point of connection of the two companies, if it appears that ''the cars of the Leavenworth company (defendant) can be operated more safely and expeditiously, and thus more perfectly serve their patrons.'' Said section further provides that, ''in view of the necessity on the part of the Leavenworth company (defendant) making as quick time as possible between the cities of Leavenworth, Kansas, and Kansas City, Missouri, using the tracks of the Metropolitan Company (street railway) as herein provided for, it is further agreed'' that in certain con-

tingencies there may be a change of route over the street railway.

Afterwards a certain viaduct and terminal company constructed a viaduct over certain lowlands and railway tracks between Kansas City, Kansas, and Kansas City, Missouri, over which the street railway company began to operate its cars, and the defendant, concluding that it could get into Kansas City, Missouri, more directly by this route, entered into the modified agreement spoken of above, whereby it agreed to bear one-half the expense with the street railway company for "curves, tracks, and special works necessary to enable its cars to be turned from such tracks," etc. Section 3 provides that defendant "shall pay all trainsmen wages while they are engaged in operating its cars" on the street railway track, but that such men shall be under the orders of the latter company, "and, as between said companies, shall in all respects be regarded for the time being as the employees of the street railway company."

Now, we are unable to see how defendant could have been harmed by the oral evidence of Egan that he did not hire or pay the motormen who operate defendant's cars over the street railway tracks. That fact is made manifest from the face of the written agreement. The last provision above referred to makes this quite plain. But, if the written contracts did provide, on their face, that the street railway company should take defendant's cars and operate them exclusively, with its own servants, we do not see any reason why that should prevent the fact from being shown, if it were a fact, that, notwithstanding the writing, the defendant operated them with its own servants, or at least with its own motorman. Written contracts cannot be utilized to prevent evidence that they were not observed.

Defendant further insists that, since the Metropolitan Company was a street railway, it was not a

railroad within the meaning of that word as used in the act of Congress. An interurban trolley, or electric system of railway, running through more than one State, carrying passengers or freight, or both, is undoubtedly engaged in interstate commerce, and is a railroad within the meaning of the act of Congress. Now, whether a street railway is a railroad in the ordinary acceptation of that term is a question which has received opposing answers. It was held not to be a railroad in Missouri (Sams v. Railway Co., 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475), and in Omaha Street Ry. v. Int. Com. Com'n, 230 U. S. 324, 33 Sup. Ct. 890, 57 L. Ed. 1501, 46 L. R. A. (N. S.) 385, it was held that it was not a railroad within the meaning of the act of Congress. But that case is so unlike this as to be of little service. The facts which we have recited justify us in stating the question here to be this: Is an electric interurban railway line which transfers its cars, with passengers therein, from its track to the track of a street railway, and thence transports them over the latter track from one State into another State, dividing the fare collected for that part of the transportation covering the street railway tracks, a railroad engaged in interstate commerce within the meaning of the act of Congress? In our opinion it is. The use of the street railway tracks in the transportation of passengers in its cars from Kansas into Missouri, and from Missouri into Kansas, was no more than the use of a terminal facility by defendant. It is common knowledge that railroads have terminal facilities for entrance into cities, which they obtain by various modes from other corporations, or persons, at an agreed compensation. The mode of operating such facility and collecting the compensation cannot divest the railroad of its character, so long as the business is the business of such road, and conducted by it.

Our conclusion is that the judgment should be affirmed. All concur.