JOHN F. MORRIS, APPELLEE, v. WALKER D. HINES, APPELLANT.

FILED FEBRUARY 16, 1922. No. 21744.

1. **Master and Servant:** FEDERAL EMPLOYERS' LIABILITY ACT: DEFENSE OF CONTRIBUTORY NEGLIGENCE. The defense of contributory negligence is not available under the federal employers' liability act. Its only effect, where it exists, is to reduce the amount of damages.

2. ——: ——: FELLOW SERVANTS. The fellow servant doctrine is not available as a defense under the provisions of said act.

3. ——: ——: NEGLIGENCE. The act expressly makes the common carrier liable for the negligence of its officers, agents, or employees.

4. ——: ——: ASSUMPTION OF RISKS. There is no evidence in this case that plaintiff was injured because of the violation of any safety appliance statute; therefore the defense, assumption of risk, remains.

5. ——: ——: APPLIANCES. A master must exercise reasonable care to furnish a servant suitable and safe tools for the work.

Morris v. Hines.

6. ———: ———: DUTY OF MASTER. It is the duty of the master to warn and instruct as to defects and dangers of which he knows, or ought, in the exercise of reasonable care and diligence, to know, and of which the servant has no knowledge actual or constructive.

7. Instructions examined, and found not to be prejudicial to appellant.

8. Appeal: BILL OF EXCEPTIONS. Affidavits alleging misconduct of opposing counsel, in order to be considered by this court, must be incorporated in and made a part of the bill of exceptions.

9. ———: VERDICT. The verdict is sustained by sufficient evidence, except as to the amount thereof.

10. Damages: REMITTITUR. The evidence examined, and the verdict *held* to be excessive, and a new trial ordered unless a remittitur of $4,000 is filed, in which case the judgment for $8,000 will be affirmed.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Affirmed on condition.*

*J. A. C. Kennedy, Edward J. White* and *Yale C. Holland,* for appellant.

*Matthew Gering* and *A. L. Tidd, contra.*

Heard before MORRISSEY, C.J., ALDRICH and FLANSBURG, JJ., HOSTETLER and MORNING, District Judges.

HOSTETLER, District Judge.

The plaintiff for his cause of action alleges that he was employed on January 10, 1919, as a section hand; that he was inexperienced in said work; that defendants knew this; that prior to January 22, 1919, the day he was injured, defendants furnished a fellow servant with a defective and imperfectly tempered spike maul; that the defective condition of said maul was known to defendants, or could have been known by the exercise of reasonable care; that said maul was rough, worn and chipped on the edge; that defendants knew the dangerous condition of said maul; that defendants did not warn or give him notice of such condition. Plaintiff alleges that the fellow servant to whom said defective

maul was furnished placed it between a spike and a rail and directed plaintiff to strike the maul for the purpose of straightening the spike; that plaintiff did so, and that a piece of steel from the defective maul flew into his right eye and destroyed the sight. thereof. Plaintiff alleges that the fellow servant failed to warn him that the maul was defective.

Defendants admit the employment of the plaintiff as a section hand; allege that he was familiar with his duties and with the use and nature of spike mauls, and that he knew about the defective condition of the spike maul. The answer further admits that plaintiff got something in his eye that caused the loss of the sight thereof. For further answer defendants deny the allegations of the petition, and allege contributory negligence and assumption of risk.

Plaintiff for reply denies the allegations of the answer, except in so far as they admit the allegations of the petition.

Upon the .issues joined trial was had, and the jury returned a verdict for plaintiff and against Walker D. Hines, director general, for $12,000. Upon this verdict judgment was rendered and motion for new trial overruled. Defendant Hines appeals to this court.

The plaintiff contends that this action is properly brought under the federal employers' liability act. 8 U. S. Comp. St. 1916, secs. 8657-8665.

The defendant in his brief says: "Both parties concede that the federal employers' liability act controls." The legal rights of the parties must be determined by this act. In so far as its provisions apply to the facts in this case, said act is as follows:

"Section 8657. Every common .carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any

of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

"Section 8659 . In all actions hereafter brought against any ·such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee,·  *  *  *  the fact that the employee may have been guilty of contributory negligence shall not bar a recovery,  but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; provided, that no such employee who may be injured *  *  *  shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury  *  *  *  of such employee."

"Section 8660 . In any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to  *  *  *  any of its employes, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury  *  *  *  of such employee."

Defendant contends that the evidence is not sufficient to sustain the verdict and judgment. Defendant alleges that there was no evidence to justify the jury in finding that the chip which struck plaintiff in the eye came from the defective maul. Plaintiff testified that he struck the defective maul three.times, and that when he made the third stroke he was struck in the eye by a chip which he thought came from the maul, that he did not strike any object other than the maul, that he could not hit the spike.

B. L. Coffman testified that he saw plaintiff hit the maul once, and that he then threw his hand to his eye.

Robert Earle testified that he heard Hinds tell plaintiff to strike the maul.

Defendant's witness, Guy O. Hinds, testified that plaintiff hit the east end of the maul, that is the end with the chips off; he hit it three times and then dropped his maul and threw his hand to his eye.

Dr. J. F. Kelly, the X-ray specialist, testified that he examined plaintiff's eye and that a piece of metal was located in the orbit above the eyeball.

The maul struck by plaintiff showed where several chips had been broken off. Were the jury justified in finding from this evidence that the chip that struck plaintiff in the eye came from the defective maul? There is no evidence that he struck any other object than the defective maul. It is certainly a reasonable conclusion that the chip came from the object he struck, particularly when said object disclosed places where chips had been broken off. It is unreasonable to believe that the chip came from some object he did not strike. The jury drew from the evidence the only reasonable conclusion the evidence would warrant—that the metal chip came from the defective maul. *Swaim v. Chicago, R. I. & P. R. Co.*, 187 Ia. 466, is an instructive case upon this subject. It is there said:

"Proximate cause is not always capable of direct proof. Indeed, more often than otherwise, it is a matter of deduction or natural inference from the circumstances appearing in evidence. It is no answer to the plaintiff's claim in this respect to say that fragments of rock will sometimes fly under the impact of a pick in perfect condition, and that it is, therefore, *possible* for plaintiff to have received the injury of which he complains, even if the pick had not been defective. Absolute certainty of proof is not required, and indeed is rarely obtainable. As it has been stated by this court, 'Proximate cause is probable cause; and the proximate consequence of a given act or omission, as distinguished from a remote

consequence, is one which succeeds naturally in the ordinary course of things.' "

Again, defendant alleges that the evidence is insufficient to warrant the jury in finding that the fellow servant, Guy O. Hinds, told plaintiff to hit the defective maul. Plaintiff testified that Hinds told him to hit the maul. He is corroborated by Coffman and Earle, who were in close proximity, who both testified that Hinds told plaintiff to hit the maul. Hinds denies this, and says he told plaintiff to hit the spike. Here were three witnesses against one. To say the least, the evidence was conflicting. The jury were fully justified in finding in favor of the plaintiff on this point.

Again, does the evidence show that the maul was defective? Defendant's witness Hinds testified: "Q. When you went to work where? A. On the section; when I first picked that maul out of the tool house, from the time I went to work it chipped off some. Q. Was the maul rough? A. It would have to be. Q. Well, was it? A. Yes, sir. Q. How long had it been rough and chipped before the accident, to your knowledge? A. A couple of weeks." This evidence clearly established the fact that the maul was chipped, and that Hinds, the fellow servant, knew it for at least two weeks before the accident. He said it chipped off when he used it. If it chipped off once or twice while he used it, he had notice and knew that it was liable to chip again, and it was clearly negligence on his part to direct plaintiff to strike the maul under the circumstances as he knew them to exist.

Plaintiff testifies that he had never observed the maul; that he did not know it was chipped or defective; that it was not in a position so he could see the chips when he struck the blow. No one testifies to the contrary. It was for the jury to say whether he acted as a reasonable man under the circumstances. If a carpenter stopped to examine the head of every nail before he drove it, he would be useless. If a section man stopped to examine every object he struck, he would lose his job.

But defendant contends that the maul was not defective. Defendant introduced witnesses who said it was a reasonably safe tool. Plaintiff also produced witnesses on this subject: Mr. Dodge, in charge of the tool room of the Burlington, testified: "Q. Mr. Dodge, looking at that maul, what would you say with reference to that being a reasonably safe tool to use, and a proper tool to be given to a man to use for the purpose for which it is intended? A. That tool should not be used at all, after it started to fly off to pieces like that. Q. Why? A. Simply because it is defective in the hardening of it. Q. What would you say about that being a defective or proper tool? A. It would be defective." On cross-examination he further testified that the maul should not be used at all, because when a maul like that starts to chip off, a chip might fly off when it strikes a spike or corner of rail. A section foreman should turn in a tool like that and have it redressed, overhauled, dressed off and retempered. Defendant's section foreman, Wilson, testified: "If a maul chips very early after we get it, I would say it was poorly tempered; if a maul of that kind was called to my attention, I would return it to Atchison."

The question was submitted to the jury and a finding on this point was rendered against the defendant's contention. The finding is sustained by sufficient evidence.

It also appears from the evidence that it was the custom of defendant's foreman, Mr. Wilson, to take charge of the tools at the end of each day's work and reissue them on the following day, hence they were constantly under his personal observation and inspection. He alone had the key to the tool house. It would seem to be unnecessary to call his attention to what was already in his possession and under his observation. In any event, it was for the jury to say whether, under all the evidence and circumstances, he had knowledge of the defective condition of the maul in question.

The evidence fairly shows that plaintiff was inex-

Morris v. Hines.

perienced; that he had been farming and doing ordinary labor; that he knew nothing about tempered mauls, and had never used the defective maul or noticed its condition until after the accident. Plaintiff and Otis Wilson, defendant's section foreman, both testify that plaintiff was not instructed in the way his work on the section should be carried on, nor was he given instructions as to the use of the tools. Defendant's witness Melburn testified that section men should be instructed in the use of the tools.

It is the duty of the master to warn and instruct his servants as to defects and dangers of which he knows, or ought, in the exercise of reasonable care and diligence, to know, and of which the servant has no knowledge actual or constructive. *Evans Laundry Co. v. Crawford,* 67 Neb. 153. "The duty of warning and instructing a servant is a primary duty of the master." 26 Cyc. 1167, and many cases cited.

From a careful review of the entire testimony we conclude that the evidence was conflicting, and that there was sufficient evidence to sustain a verdict finding for plaintiff and against defendant for the reasonable and just damages sustained by plaintiff.

Defendant excepts to instruction No. 3. He contends that the court withdrew from the consideration of the jury the question of whether defendant furnished plaintiff's fellow servant with a defective maul. The instruction does not justify the criticism. The instruction tells the jury that they must find from the evidence that defendant did furnish a defective maul to plaintiff's fellow servant before plaintiff could recover. Even if the court had assumed the maul to be defective, he would only have asserted a fact that was scarcely debatable. Other objections are made to instruction No. 3. Instruction No. 3 fairly states the proposition necessary to be proved by plaintiff, and is without prejudicial error to defendant.

Defendant excepts to instruction No. 10, and alleges

that it was error to permit .the jury to speculate from whence the chip came. The trial court specifically told the jury that, if the chip did not come from the maul, to find for the defendant. That was sufficient.

Defendant alleges error because the trial court did not instruct the jury that, if Hinds told Morris to strike the spike and Morris struck the maul instead, the defendant would not be liable. In instruction No. 5 the trial court required the plaintiff to prove, as a condition of his recovery, that Hinds told plaintiff to strike the maul. That fairly meets defendant's objection. However, if defendant desired a more specific instruction he should have requested an instruction covering the point, which he did not do.

The instructions in this case as a whole were favorable to the defendant. The plaintiff was required to prove every proposition by a preponderance of the evidence. In instruction No. 6 the trial court instructed the jury: "If you find that he (plaintiff) did not exercise such ordinary care, and that his failure so to do contributed to the accident, then the plaintiff cannot recover and your verdict should be for the defendant." In other words, the defendant had the benefit of the defense of contributory negligence, when the statute (section 8659, *supra*) specifically provides that contributory negligence shall not be a defense, but shall be considered only in mitigation of damages. Contributory negligence does not bar an action under the federal employers' liability act, but only mitigates the damage. *Pittsburgh, C., C. & St. L. R. Co. v. Cole*, 260 Fed. 357; *Chicago, R. I. & P. R. Co. v. Ward*, 252 U. S. 18.

It is only when plaintiff's act is the sole cause, and defendant's act is no part of the causation, that defendant is free from liability under the act. *Delano v. Roberts*, 182 S. W. (Mo. App.) 771; *Grand Trunk W. R. Co. v. Lindsay*, 201 Fed. 836, 233 U. S. 42; *Pennsylvania Co. v. Cole*, 214 Fed. 948; *Louisville & N. R. Co. v.*

*Haloway's Admr.,* 163 Ky. 125; *Norfolk & W. R. Co. v. Earnest,* 229 U. S. 114.

The act makes the company liable if the negligence of the company contributed to, that is to say, had a share in producing the injury. *New York, C. & St. L. R. Co. v. Niebel,* 214 Fed. 952; *Cincinnati, N. O. & T. P. R. Co. v. Hall,* 243 Fed. 76.

The act imposes on an employer liability for negligent acts of his servants performed within the course of their employment. The act (section 8657) abolishes the fellow-servant doctrine. *Carter v. Kansas City S. R. Co.,* 155 S. W. (Tex. Civ. App.) 638; *Devine v. Chicago, R. I. & P. R. Co.,* 266 Ill. 248; *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146.

The negligence of the officers, agents or employees is the negligence of the defendant common carrier. Section 8657, *supra.*

The negligence of Guy O. Hinds in the case under consideration was the negligence of defendant. The act supersedes all other common-law and statutory liability on the part of common carriers to employees engaged in interstate commerce. *De Atley v. Chesapeake & O. R. Co.,* 201 Fed. 591.

The decisions of the supreme court of the United States are controlling in actions under this act. *McAdow v. Kansas City W. R. Co.,* 192 Mo. App. 540.

The decisions of the federal courts construing and applying the act will be followed by the state courts. *Montgomery v. Southern P. R. Co.,* 64 Or. 597.

In the case under consideration, there is no evidence that the defendant violated any statute enacted for the safety of employees, or that the violation of any such statute contributed to plaintiff's injury. The defense "assumption of risk" as at common law therefore remains in this case. Mr. Justice McKenna says in *Jacobs v. Southern R. Co.,* 241 U. S. 229: "The language of section 4 demonstrates its meaning. It provides that in any action brought by an employee he 'shall not be held

to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.'" It is clear, therefore, that the assumption of risk as a defense is abolished only where the negligence of the carrier is in violation of some statute enacted for the safety of employees. In other cases, therefore, it is retained.

The trial court in instruction No. 7, and generally in his instructions, properly submitted the defense of assumption of risk to the jury. The evidence was conflicting and the verdict of the jury must stand; the court cannot usurp its functions.

Defendant cites many decisions upon the assumption of risk defense. Most of the cases arise where the servant himself had a defective tool and, knowing its defective and dangerous condition, continued to use it without protest. In such cases the servant clearly assumes the risk and cannot recover. But such is not the case we have under consideration. In this case plaintiff was not using the defective maul, and had no knowledge of its condition; other cases cited are determined upon the doctrine of contributory negligence. Space will not permit a discussion of each case cited. The instructions were not prejudicial to defendant.

Defendant complains that plaintiff's counsel was guilty of misconduct during the trial prejudicial to defendant. Affidavits alleging such misconduct are found in the transcript, but are not incorporated in or made a part of the bill of exceptions. These affidavits are the only evidence of such alleged misconduct. According to the repeated decisions of this court such affidavits cannot be considered. *Chicago, B. & Q. R. Co. v. Kellogg,* 54 Neb. 127; *Muchow v. Reid,* 57 Neb. 585; *Summers v. Simms,* 58 Neb. 579.

Complaint is also made that plaintiff's counsel was permitted to ask leading questions. If every case appealed to this court should be reversed where leading

Morris v. Hines.

questions were asked, there would only occasionally be a case affirmed. This subject is wisely left to the discretion of the trial judge, and unless an abuse of such discretion is shown this court will not interfere. We do not find in this case such an abuse of discretion as will justify a reversal of the case.

Defendant contends that the verdict of $12,000 is excessive. Many courts have held that the best attainable criterion of the reasonableness of the verdict of a jury is its conformity to the average amount awarded by juries in cases in which injuries of like nature and like extent have been sustained. *Louisville & N. R. Co. v. Fox*, 11 Bush. (Ky.) 495; *Lockwood v. Twenty-third Street R. Co.*, 15 Daly (N. Y.) 374; *Beach v. Bird & Wells Lumber Co.*, 135 Wis. 550; *Merchants & Miners Transportation Co. v. Corcoran*, 4 Ga. App. 654; *Deep Mining & Drainage Co. v. Fitzgerald*, 21 Colo. 533, 13 Am. Neg. Cases, 615; *Spahn v. Peoples R. Co.*, 3 Boyce (Del.) 302, 317; *Maloney v. Winston Bros. Co.*, 18 Idaho, 740, 47 L. R. A. n. s. 634; *Standard Oil Co. v. Tierney*, 92 Ky. 367, 14 L. R. A. 677, 36 Am. St. Rep. 595.

In 17 C. J. 1116, sec. 453, a large number of verdicts are listed which have been rendered and sustained in cases wherein the loss of an eye has been involved. We have taken 23 of these cases where verdicts were held not excessive, and we find an average verdict of about $6,500. We assent to the proposition that the verdict in this case is excessive. The plaintiff is an ordinary working man without any special trade or profession. He is now engaged in farming, and doing his own work. He is probably earning nearly as much money as when he worked on the section. He drives his own automobile without difficulty. He suffered no unusual physical pain as the result of this injury. Defendant paid all of his medical and hospital expenses. His other eye is not affected or seriously threatened. The eyeball is saved. His appearance is not marred. That he is blind in his right eye can only be observed upon the closest inspec-

tion. The damages must be compensatory only. Each case must depend upon its own particular facts. He is only entitled to the present value of the pecuniary loss he has and will in the future sustain.

We conclude that the verdict is excessive. It is therefore considered that the judgment of the district court be set aside and a new trial granted, unless the appellee enter a remittitur of the sum of $4,000 within 20 days from this date. If such remittitur is filed, the judgment to the extent of $8,000 will be affirmed.

AFFIRMED ON CONDITION.